**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GEORGE WOOD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>IONATRON, INC., et al.,<br><br>Defendants. | No. CV 06-354-TUC-CKJ<br>CV 06-377-TUC-CKJ |
| RAYMOND DEEDON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>IONATRON, INC., et al.,<br><br>Defendants. | **ORDER** |

Pending before the Court are Lead Plaintiffs' Motion for Final Approval of Settlement, Application for Award to Lead Plaintiff, and Application for Award of Attorneys' Fees [Doc. # 154]. The Court conducted a Fairness Hearing on September 24, 2009, at which time the Court advised the parties that it would accept the settlement and issue a formal order.

*Factual and Procedural Background*

Ionatron, Inc. ("Ionatron") became a public company through a reverse merger

with U.S. Home and Garden in March 2004. At the time of the IPO, Robert Howard and Thomas C. Dearmin owned 49.7% of the Company's outstanding shares. Ionatron's primary business is developing and marketing Directed Energy Weapon technology products, including the Joint IED Neutralizer weapon ("JIN"). The JIN grew out of Ionatron's Laser Induced Plasma Channel ("LIPC") technology as a way of directing electricity at a target. Specifically, the JIN was designed to assist the U.S. military in destroying IEDs.

On March 11, 2005, the *Mississippi Business Journal* published an article announcing that Ionatron had entered into a $1.7 million contract with the U.S. Air Force for the "prototyping and deployment" of a counter roadside/ improvised explosive device (IED) system. On May 4, 2005, the beginning of the Class Period, Defendants issued a press release announcing that the JIN had been featured the previous evening on the NBC Nightly News. The Plaintiffs alleged that starting with this press release through the eventual announcement on May 10, 2006, that the government had determined the JIN vehicle platform required further changes, Defendants engaged in a number of misrepresentations and/or omissions about the readiness of the JIN in an effort to mislead the public and artificially inflate Ionatron's stock price.

Plaintiffs filed this proposed class action individually and on behalf of all persons who purchased the publicly traded common stock of Ionatron from May 4, 2005 to May 10, 2006 ("Class Period").[1] Plaintiffs alleged (1) securities fraud under Section 10(b) of the Exchange Act of 1934 and Rule 10b-5, (2) control person liability under Section 20(a) of the '34 Act. The essence of Plaintiffs' claim is that the Defendants committed securities fraud by making material misrepresentations about the operational capabilities and field readiness of the JIN.

On July 31, 2009, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement [Doc. # 147], docketing the motion as a Notice of Settlement, and a

---

[1] Hylton S. Petit, Jr., and Claire Silverman are the lead plaintiffs.

- 2 -

Stipulation regarding the Notice of Settlement [Doc. # 149]. On August 6, 2009, the Court issued an Order in which:

    1.    The Court found, for the purposes of the Settlement only, that the prerequisites for a class action under Fed.R.Civ.P. 23(a) and (b)(3) were satisfied in that: (a) the number of Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the named representatives are typical of the claims of the Class they seek to represent; (d) the Lead Plaintiffs will fairly and adequately represent the interests of the Class; (e) the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

    2.    The Court approved the form of Publication Notice and directed Plaintiffs' Lead Counsel to cause the Publication Notice to be published in The Wall Street Journal.

    3.    The Court ordered that she would only consider comments and/or objections to the Settlement, the Plan of Allocation, or the award of attorneys' fees and reimbursement of expenses only if such comments or objections and any supporting papers were filed in writing with the Clerk of the Court, United States District Court for the District of Arizona, on or before the 9th day of September, 2009.

*See* August 6, 2009, Order [Doc. # 150].

On September 24, 2009, the Court conducted a final fairness hearing in open court. Various counsel appeared in person and telephonically. No class members appeared and no objections to the Settlement Agreement were expressed. The hearing was held to determine: (1) whether the terms and conditions of the Stipulation and Agreement of Settlement are fair, reasonable and adequate for the settlement of all claims asserted by the Class against the Defendants in the Complaint now pending in this Court under the

above caption, including the release of the Defendants and the Released Parties, and should be approved; (2) whether judgment should be entered dismissing the Complaint on the merits and with prejudice in favor of the Defendants only and as against all persons or entities who are members of the Class herein who have not requested exclusion therefrom; (3) whether to approve the Plan of Allocation as a fair and reasonable method to allocate the settlement proceeds among the members of the Class; and (4) whether and in what amount to award Plaintiffs' Counsel fees and reimbursement of expenses.

*Review of Settlement Agreement*

The Court has considered the proposed Settlement Agreement, the record in this matter, including the written and oral arguments of counsel. The Court finds the Settlement Agreement is fair, reasonable, and adequate and, therefore, the Court approves the Settlement Agreement as discussed herein.

*Summary of Terms of Settlement Agreement*

The Settlement Agreement requires Defendants or their D&O Insurers to pay or cause to be paid $5.3 million ("Cash Settlement Amount") into escrow in an interest-bearing account established by and for the benefit of Lead Plaintiffs and the Class. The Settlement Agreement also requires Defendants to provide the amount of Applied Energetics shares sufficient to equal a total value of $1.2 million (as determined by the average closing price per share of Applied Energetics stock for the 10 trading days immediately prior to the final fairness hearing held in this action) up to a cap of four (4) million shares. *See Stipulation*, ¶4(a).

*Legal Standard for Approving Settlement Agreement*

In the context of a class action, "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to 'an overriding public interest.'" *Austin v. Pennsylvania*

*Department of Corrections*, 876 F.Supp. 1437, 1455 (E.D.Pa.1995), *quoting Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977).  Due to their representative nature, class actions are susceptible to abuse by named plaintiffs or their counsel. *Id.*  The Federal Rules of Civil Procedure sets forth the procedural requirements of a class action settlement:

> (e) **Settlement, Voluntary Dismissal, or Compromise.**  The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> >
> > (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> >
> > (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> >
> > (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> >
> > (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed.R.Civ.P. 23.  The parties have previously filed "a statement identifying any agreement made in connection with the proposal." Fed.R.Civ.P. 23(e)(3).  It appears that a notice of the hearing substantially in the form approved by the Court was mailed to all persons or entities reasonably identifiable, who purchased the publicly traded securities of Ionatron during the Class Period between May 4, 2005 and May 10, 2006, except those persons or entities excluded from the definition of the Class, as shown by the records of Ionatron's transfer agent, at the respective addresses set forth in such records, and that a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* pursuant to the specifications of the Court. Fed.R.Civ.P. 23(e)(1). The Court invited objections from class members and conducted a fairness hearing to consider whether the Settlement Agreement is "fair, reasonable, and

- 5 -

adequate." Fed.R.Civ.P. 23(e)(2).

*Fair, Reasonable, and Adequate Settlement Agreement*

In determining whether a proposed agreement is fair, reasonable, and adequate, the Court must consider the settlement as a whole, rather than individual provisions, for overall fairness. *Staton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir.2003), *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998). In making this determination, a court may consider the following factors:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action throughout trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Molski v. Gleich*, 318 F.3d 937 (9th Cir.2003), *quoting Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir.1998). The Court need not only consider those factors which are relevant to the case before it "[b]ecause the settlement evaluation factors are non-exclusive." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 576 n. 7 (9th Cir.2004). The Court must consider the relevant factors but need not "reach any ultimate conclusions on the contested issues of law and fact which underlie the merits of the dispute, for it is the very uncertainty of the outcome of litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir.1982); *Hanlon*, 150 F.3d at 1026.

*Strengths of Plaintiffs' Case*

The Settlement is fair and reasonable in light of the hurdles Lead Plaintiffs would have to overcome to defeat summary judgment and ultimately to prove liability and damages. Liability under the Exchange Act requires Lead Plaintiffs to prove that

Defendants made materially false or misleading representations, Defendants acted knowingly or recklessly, that the Class' losses were caused by Defendants misrepresentations, and Lead Plaintiffs and the Class Members suffered damages. Failure to prove just one of these elements would prevent any recovery. The parties dispute whether the statements made by Defendants were false and misleading. Additionally, Lead Plaintiffs assert the facts provided by the confidential witnesses establish scienter; however, Defendants assert that it is illogical to believe that Defendants knew the JIN was not suitable for deployment and that the minor portions of stock sales made by Defendants do not support an inference of scienter. Lead Plaintiffs believe expert testimony would establish loss causation despite Defendants' claims that the drop in stock price was not statistically significant. The parties dispute whether Lead Plaintiffs can show that the alleged misrepresentations inflated the stock price because the stock price repeatedly declined. Lead Plaintiffs' ability to establish damages would require additional discovery and expert testimony.

*Risk, Expense, and Likely Duration of Further Litigation*

Lead Plaintiffs assert that extensive discovery remains to establish liability and damages and recognize that permissible discovery in light of national security interests would result in lengthy and expensive litigation. The likelihood and expense of continued litigation weighs in favor of approving the Settlement Agreement. In light of the number of named Plaintiffs, the size of the proposed class, the significant cost of continued litigation, the mandates of Fed.R.Civ.P. 1 (encouraging the "just, speedy, and inexpensive determination of every action.") favor approval of the Settlement Agreement. Additionally, the "compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2nd Cir.2005).

*Extent of Discovery and the Stage of the Proceedings*

1    Lead Plaintiffs have not yet engaged in extensive discovery but have received
2 extensive factual presentations by Defendants during mediation. Again, Lead Plaintiffs
3 acknowledge the discovery concerns in light of national security interests. Plaintiffs'
4 counsel assert they have consulted with experts and assert they have sufficient
5 information to make an informed decision as to the reasonableness of the settlement.

*Amount of the Settlement*

The proposed $6.5 million Settlement – or approximately $0.44 per share – provides members of the Settlement Class with a substantial recovery that is well in excess of typical recoveries, as the Settlement represents approximately 17 percent of Lead Plaintiffs' "best case" damages estimate of approximately $2.65 per share. Significantly, Lead Plaintiffs' "best case" damages estimate is based upon the assumption that, among other concerns, Plaintiffs' Counsel would be able to convince the Court and the jury that Lead Plaintiffs are entitled to prevail on every theory and for every claimed drop in Ionatron's stock price.

*Experience and Views of Counsel*

Another relevant factor is the experience of counsel who determined that settlement was appropriate in this matter. Many of the law firms involved in this case have considerable experience in the applicable area of law and in handling similar actions. Izard Nobel LLP engages in class action litigation on behalf of investors alleging misrepresentations in connection with the purchase of securities and have been formally appointed by many courts as lead counsel or co-lead counsel for investors in securities class actions. *See* Joint Declaration, Document # 156, Exhibit D. Scott + Scott LLP is nationally recognized for recovery of money for individuals and institutional investors through securities class actions. *Id.* Bonnett, Fairbourn, Friedman & Balant, P.C., has represented consumers and investors in major class action cases in federal and state courts; it has extensive experience in plaintiffs' class action securities cases in and out

of the state of Arizona. *Id*.

Where, as here, settlement is reached through arms'-length negotiations between experienced counsel, and there is no evidence of collusion or bad faith, the judgment of counsel concerning the adequacy of the settlement is entitled to deference. Plaintiffs' Counsel, who have a great deal of experience in securities class action litigation, have weighed the factors and have concluded that the Settlement is a favorable result which is in the best interests of the Settlement Class. The experience and view of Plaintiffs' counsel favors approval of the settlement.

*Reaction of Class Members to the Proposed Settlement*

The reaction of Settlement Class Members to the proposed Settlement supports final approval. Approximately 8,360 copies of the Notice were mailed to Settlement Class Members or their representatives, the Notice was published on a dedicated internet website, and a Summary Notice was published in The Wall Street Journal. Although the Notice provided that Settlement Class Members could object to the proposed Settlement by September 9, 2009, no objections to the Settlement were submitted and only one Class Member requested exclusion.

*Absence of Evidence of Collusion*

The Ninth Circuit has that "[b]efore approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties . . ." *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985). In this case, the settlement negotiations were conducted at arms length with the assistance of a mediator. *See e.g. Wal-Mart Stores, Inc.*, 396 F .3d at 116-117 (stating that "a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery"), *citations omitted*. The arms length negotiations that occurred in this matter took place

1  with a second mediator after initial efforts with a different mediator failed.  There is no
2  evidence of collusion in this case.

*Attorneys' Fees*

Plaintiffs' Counsel request attorneys' fees in an amount equal to 30% of the settlement fund (they seek cash and stock in the same ratio as recovered for the class). Generally, attorneys' fees provisions included in settlement agreements are subject to the determination of whether the agreement is "fair, adequate, and reasonable." Fed.R.Civ.P. 23(e). The assumption in scrutinizing a class action settlement agreement is that the class members have an interest in assuring that the fees to be paid class counsel are not unreasonably high.  Thus, the "'[district] court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper.'" *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003).  The Ninth Circuit has instructed that because the amount of fees is often open to dispute and because the parties are compromising to avoid further disputes, the district court need not inquire into the reasonableness of fees with the same level of scrutiny as when the amount of fees is litigated. *Staton*, 327 F.3d at 966. The district court, however, must conduct some inquiry into the hours expended and the billing rate.

Here, the proposed settlement provided that Lead Plaintiffs' counsel would seek an award not to exceed 33 1/3 % of the settlement fund, along with reimbursement of out-of-pocket expenses, including expert fees, in an amount not to exceed $235,000.00. Notice of this potential award was provided to the settlement class members and no objections have been made.  Lead Plaintiffs' counsel have expended considerable time (almost 3000 hours) and effort in the expectation that if they were successful in obtaining a recovery fo the class they would be paid from such recovery. The 30% of the settlement fund ($1,950,000) requested by counsel is well within the range routinely approved in such cases.  The requested award of $1,950,000 is fair, reasonable, and proper. *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-29 (9th Cir. 1999).

*Summary*

The Court finds the terms of the Settlement Agreement are fair, adequate and reasonable. The terms of the Settlement Agreement address Plaintiffs' grievances as set forth in the Complaint. There is no evidence of collusion among the parties or that counsel brought this action solely for personal financial gain. Rather, Plaintiffs' counsel have sacrificed the potential for earning a greater award of attorneys' fees and costs in the interest of settling this matter for the benefit of the class members. After a thorough review of the record in this matter, considering all the relevant factors, considering and determining the fairness and reasonableness of the award of attorneys' fees and expenses requested, and the absence of any objections to the Settlement Agreement, the Court approves the Settlement Agreement and makes the following orders.[2]

Accordingly, IT IS ORDERED:

1. The Court has jurisdiction over the subject matter of the Action, the Lead Plaintiffs, all Class Members, and the Defendants.

2. The Court finds that the prerequisites for a class action under Federal Rule of Civil Procedure 23 (a) and (b)(3) have been satisfied in that: (a) the number of Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Class Representatives are typical of the claims of the Class they seek to represent; (d) the Class Representatives have and will fairly and adequately represent the interests of the Class; (e) the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

---

[2] All capitalized terms used herein having the meanings as set forth and defined in the Stipulation.

3. Pursuant to Fed.R.Civ.P. 23, this Court hereby finally certifies this Action, for purposes of this Settlement only, as a class action on behalf of all persons who purchased the publicly traded securities of Ionatron during the period between May 4, 2005 and May 10, 2006, inclusive. Excluded from the Class are the Defendants, the officers, directors and affiliates of Ionatron at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest, and all shares of Ionatron stock owned or acquired, directly or indirectly, by any of them. For purposes of this Settlement, the term "controlling interest" shall include any interest of 5% or more of the common stock of any entity. Also excluded from the Class are the persons and/or entities who requested exclusion from the Class as listed on Exhibit 1 annexed hereto.

4. Notice of the pendency of this Action as a class action and of the proposed Settlement was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Fed.R.Civ.P. 23, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. 78u-4(a)(7) as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

5. The Settlement is approved as fair, reasonable and adequate, and the Class Members and the parties are directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation.

6. The Complaint, which the Court finds was filed on a good faith basis in accordance with the PSLRA and Fed.R.Civ.P. 11 based upon all publicly available information, is hereby dismissed with prejudice and without costs, except as provided in the Stipulation, as against the Defendants.

7. Members of the Class and the successors and assigns of any of them, are

hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly, derivatively, as a class representative, or in any other capacity, any and all claims, rights or causes of action or liabilities whatsoever, (including, but not limited to, any claims for damages, injunctive relief, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on United States federal, state, local, statutory or common law or any other law, rule or regulation, whether foreign or domestic, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether class, derivative, or individual in nature, including both known claims and Unknown Claims, that have been asserted in the Action by the Class Members or any of them against any of the Released Parties (whether pleaded in the Complaint or not), or (ii) that could have been asserted in the Action or in any forum by the Class Members or any of them against any of the Released Parties, and which also arise out of, relate to, or are based on any of the claims, allegations, activities, press releases or public statements set forth in the Complaint and relate to the purchase, sale, transfer or acquisition of the publicly traded securities of Ionatron during the Class Period, or any actions, representations or omissions that were alleged or might have been alleged to affect the price of any publicly traded securities of Ionatron during the Class Period. "Released Parties" means Defendants and any and all of their past or present partners, principals, employees, predecessors, successors, affiliates, officers, directors, attorneys, agents, insurers and assigns.

8. "Unknown Claims" means any and all Settled Claims which any Lead Plaintiff or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, and any Settled Defendants' Claims which any Defendant does not know or suspect to exist in his, her or its favor, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Settled Claims and Settled Defendants' Claims, the parties stipulate and agree that upon the Effective Date, the Lead Plaintiffs and the Defendants

shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiffs and Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key element of the Settlement.

9. The Defendants and the successors and assigns of any of them, are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any and all claims, rights or causes of action or liabilities whatsoever, whether based on United States federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by the Defendants or any of them or the successors and assigns of any of them against any of the Lead Plaintiffs, Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action (except for claims to enforce the Settlement) (the "Settled Defendants' Claims") against any of the Lead Plaintiffs, Class Members or their attorneys. The Settled Defendants' Claims of all the Released Parties are hereby compromised, settled, released, discharged and dismissed on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment.

10. Pursuant to the PSLRA, the Released Parties are hereby discharged from all claims for contribution or equitable indemnity, by any person or entity, whether arising

under United States federal, state, local, statutory or common law or any other law, based upon, arising out of, relating to, or in connection with the claims of the Class or any Class Member in the Action. Accordingly, to the maximum extent permissible under the PSLRA, the Court hereby bars and enjoins all such claims for contribution or equitable indemnity: (a) by any person or entity against any Released Party; and (b) by any Released Party against any person or entity other than a person or entity whose liability to the Class has been extinguished pursuant to the Stipulation and Agreement of Settlement and this Order and Final Judgment.

11. Neither this Order and Final Judgment, the Stipulation, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein shall be:

(a) offered or received against the Defendants as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of the Defendants with respect to the truth of any fact alleged by any of the plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of the Defendants;

(b) offered or received against the Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant;

(c) offered or received against the Defendants as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Defendants, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is

approved by the Court, Defendants may refer to it to effectuate the liability protection granted them hereunder;

   (d) construed against the Defendants as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or

   (e) construed as or received in evidence as an admission, concession or presumption against Lead Plaintiffs or any of the Class Members that any of their claims are without merit, or that any defenses asserted by the Defendants have any merit, or that damages recoverable under the Complaint would not have exceeded the Gross Settlement Fund.

12. The Plan of Allocation is approved as fair and reasonable, and Plaintiffs' Counsel and the Claims Administrator are directed to administer the Stipulation in accordance with its terms and provisions.

13. The Court finds that all parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

14. Plaintiffs' Counsel are hereby awarded 30 % of the Cash Settlement Amount and the Stock Settlement Amount, respectively, in fees, which sum the Court finds to be fair and reasonable, and $ 198,972.37 in reimbursement of expenses, which expenses shall be paid to Plaintiffs' Lead Counsel from the Cash Settlement Amount with interest from the date such the Settlement was funded to the date of payment at the same net rate that the Settlement fund earns such interest. The award of attorneys' fees shall be allocated among Plaintiffs' Counsel in a fashion which, in the opinion of Plaintiffs' Lead Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions in the prosecution of the Action.

15. Plaintiff Hylton S. Petit, Jr., is hereby awarded $ 2,500; and Plaintiff Claire Silverman is hereby awarded $ 2,500. Such awards are for reimbursement of these Lead Plaintiffs' reasonable costs and expenses directly related to their representation of the

Class under the PSLRA.

16. In making this award of attorneys' fees and reimbursement of expenses to be paid from the Gross Settlement Fund, the Court has considered and found that:

(a) the settlement has created a fund of $6.5 million in cash and stock that is available to the Class, plus interest thereon as applicable and that numerous Class Members who submit acceptable Proofs of Claim will benefit from the Settlement created by Plaintiffs' Counsel;

(b) Approximately 8,360 copies of the Notice were disseminated to putative Class Members indicating that Plaintiffs' Counsel were moving for attorneys' fees in the amount of up to 33 1/3% of the Gross Settlement Fund and for reimbursement of expenses in an amount not to exceed $235,000 and no objections were filed against the terms of the proposed Settlement or the ceiling on the fees and expenses requested by Plaintiffs' Counsel contained in the Notice;

(c) Plaintiffs' Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(d) Defendants have denied and continue to deny liability and have vigorously defended against the claims asserted in the action;

(e) The action involves complex factual and legal issues and was actively prosecuted over two years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

(f) Had Plaintiffs' Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiffs and the Class may have recovered less or nothing from the Defendants;

(g) Plaintiffs' Counsel have devoted nearly 3000 hours, with a lodestar value of $1,428,580.50, to achieve the Settlement; and

(h) The amount of attorneys' fees awarded and expenses reimbursed from the Settlement Fund are consistent with awards in similar cases.

17. Exclusive jurisdiction is hereby retained over the parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the Class.

18. Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

19. The Clerk of the Court shall enter judgment and shall then close its file in this matter.

DATED this 28th day of September, 2009.

_____
Cindy K. Jorgenson
United States District Judge

# EXHIBIT 1

ENTITIES REQUESTING EXCLUSION FROM THE SETTLEMENT CLASS

1. J. Giordano Securities LLC (n/k/a/ NewOak Capital Markets LLC).